IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NUIQSUT TRILATERAL, INC., | ) |
| | ) Case No. 26-cv-239-AHA |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' MOTION** |
| | ) **TO TRANSFER VENUE AND** |
| DOUG BURGUM, in his official capacity | ) **MEMORANDUM IN SUPPORT** |
| as Secretary of the Interior, *et al.*, | ) |
| Defendants. | ) |

### DEFENDANTS' MOTION TO TRANSFER VENUE

Defendant Doug Burgum, in his official capacity as Secretary of the Interior, et al. (collectively, "Defendants"), hereby move this Court pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the District of Alaska. Counsel have conferred in accordance with Local Civil Rule 7(m), and counsel was unable to discern Plaintiff's position prior to the time of filing this motion. The accompanying memorandum in support explains that this case should be transferred to the District of Alaska because it involves local interests and issues that should, in the interests of justice, be heard and decided by the Alaska district court.

Respectfully submitted this 20th day of February 2026.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s/ Paul A. Turcke*
PAUL A. TURCKE (Idaho Bar # 4759)
Trial Attorney, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
(202) 532-5994
paul.turcke@usdoj.gov

*Counsel for Defendants*

# DEFENDANTS MEMORANDUM
# IN SUPPORT OF MOTION TO TRANSFER VENUE

## I.  INTRODUCTION

Plaintiff challenges a Department of the Interior decision to cancel a "conservation" right-of-way in the National Petroleum Reserve in Alaska ("NPR-A").  Nothing about the case relates to the District of Columbia, aside from that being where the office is located of the Interior official who signed the challenged decision.  In multiple similar cases, judges in this District have found that transfer is warranted to a plaintiff's home forum and site of the underlying dispute.  The Court should follow that approach here and transfer venue to the District of Alaska.

## II.  BACKGROUND

### A.  Statutory Background

#### 1.  Administrative Procedure Act

The Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA"), provides the relevant right of action and waiver of sovereign immunity for judicial review of federal agency actions. The APA empowers a reviewing court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Such review is "fundamentally deferential – especially with respect to matters relating to an agency's areas of technical expertise."  *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012) (internal quotation marks, citation and alteration omitted).  "[J]udicial review of an administrative decision" will not involve witness testimony or discovery practice, but "will be limited to the administrative record."  *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996), *transferred to,* 320 F. Supp. 2d 1090 (D. Colo. 2004).

2.   Naval Petroleum Reserves Production Act

The 23.6 million acre NPR-A was originally established by executive order in 1923 as the Naval Petroleum Reserve #4.  *See N. Alaska Env't Ctr. v. Kempthorne*, 457 F.3d 969, 973 (9th Cir. 2006).  In 1976, Congress enacted the Naval Petroleum Reserves Production Act ("NPRPA"), Pub. L. No. 94-258, 90 Stat. 303, transferring administrative jurisdiction to the Secretary of the Interior and redesignating the area as the "National Petroleum Reserve in Alaska."  Congress provided certain directives within the NPRPA, including establishing oil and gas exploration activities as a management priority.  *See* Final Rule, 90 Fed. Reg. 51,470, 51,471 (Nov. 7, 2025).  "[A]s a result, [the NPRPA] is considered a dominant-use statute."  *Id*.

To address the 1979 oil crisis and a desire to quickly move from federal to private oil development, Congress amended the NPRPA in 1980, directing the Secretary to undertake "an expeditious program of competitive leasing of oil and gas in the [NPR-A]."  Department of the Interior Appropriations Act for Fiscal Year 1981, Pub. L. No. 96-514, 94 Stat. 2957, 2964-65 (1980); *see also ConocoPhillips Alaska, Inc. v. Alaska Oil & Gas Conservation Comm'n*, No. 3:22-cv-00121-SLG, 2023 WL 2403720, at *8 (D. Alaska Mar. 8, 2023) (Congress intended "to open the NPR-A to private leasing and exploration and production in order to increase domestic oil supply[.]").

The Bureau of Land Management's ("BLM") oil and gas program in the NPR-A consists of three basic stages: leasing, exploration, and development.  *See* 43 C.F.R. Part 3130.  Plaintiff will apparently emphasize the NPRPA's provision that exploration within certain designated areas, known as "special areas," must address "maximum protection" of surface values to the extent consistent with other oil and gas exploration requirements:

> Any exploration within the Utukok River, the Teshekpuk Lake areas, and other areas designated by the Secretary of the Interior containing any significant

> subsistence, recreational, fish and wildlife, or historical or scenic value, shall be conducted in a manner which will assure the maximum protection of such surface values to the extent consistent with the requirements of this Act for the exploration of the reserve.

42 U.S.C. § 6504(a); *see* Compl. ¶¶ 47-52.  While this language directs the Secretary to assure the maximum protection of significant subsistence, recreational, fish and wildlife, or historical or scenic value within special areas, as determined by the Secretary, that protection applies only insofar as it is consistent with the requirements of the NPRPA for the exploration and production of oil and gas resources within the NPR-A.  42 U.S.C. §§ 6504(a), 6504a(n)(2).

### B. Factual and Procedural Background

This case focuses on the Teshekpuk Lake Conservation Right-of-Way ("TLCROW") executed in December 2024.  *See* Compl., Ex. A, Dkt. 1-1.  Rather than authorize use of the lands for oil and gas development, the TLCROW could be viewed as purporting to *prohibit* the use of specified BLM lands in the Teshekpuk Lake Special Area for that purpose unless Plaintiff consented to such development.  *See id*.  The TLCROW is one of more than 150 mitigation measures identified in the NPR-A Willow Project decision that were collectively designed to offset impacts of the Project on various NPR-A resources and activities, including subsistence use.  *Id*. at 1; *see also Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 141 F.4th 976, 1001-02 (9th Cir. 2025) (summarizing mitigation standard and proposed mitigation measures).

In December 2025, the Department concluded review of the TLCROW and determined that it "was improperly issued" and "that cancellation is appropriate."  Compl., Ex. B at 2, Dkt. 1-2.  Plaintiff subsequently challenged that decision by filing this action on January 28, 2026.

### III. <u>LEGAL STANDARD</u>

The Court has authority to transfer this case – "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

3

district or division where it might have been brought." 28 U.S.C. § 1404(a). Civil suits should be resolved in the federal system at the place called for in the particular case by considerations of convenience and justice. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *see also Virts v. Prudential Life Ins. Co. of Am.*, 950 F. Supp. 2d 101, 104 (D.D.C. 2013) ("The decision whether to transfer pursuant to § 1404(a) is within the broad discretion of the district court").

In exercising its discretion, a court must first determine whether the action could have been brought in the transferee district. *See S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004). If so, a court then considers "convenience of parties and witnesses" and "the interest of justice" through a balancing of private and public interests. *Valley Cmty. Pres. Comm'n v. Mineta*, 231 F. Supp. 2d 23, 44-45 (D.D.C. 2002) (quoting 28 U.S.C. § 1404(a)), *transferred to,* 246 F. Supp. 2d 1163 (D.N.M. 2002), *aff'd,* 373 F.3d 1078 (10th Cir. 2004). The private interest considerations include: (1) the plaintiff's choice of forum; (2) the defendants' choice of forum; (3) where the claims arose; (4) convenience of the parties; (5) convenience of the witnesses; and (6) ease of access to sources of proof. *Trout Unlimited*, 944 F. Supp. at 16. The public interest considerations include: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote v. Chu*, 858 F. Supp. 2d 116, 123 (D.D.C. 2012).

**IV.     ARGUMENT**

It is proper and in the interest of justice to transfer this case to the District of Alaska. Plaintiff certainly could have filed this case in Alaska. Indeed, multiple overlapping cases involving administration of the NPR-A are ongoing, or have been recently filed, in the District of Alaska. This fact, and the public interest in having this controversy decided in Alaska, weigh

4

heavily in support of transfer. And the private interest factors similarly support transfer. Defendants therefore respectfully request that the Court grant this Motion.

### A. This Action Could Have Been Brought in the District of Alaska

"For starters, there is no dispute that this case could have been brought in the District of Alaska." *Alaska Indus. Dev. and Export Auth. v. U.S. Dep't of the Interior* ("*AIDEA*"), No. 23-cv-3126 (JMC), 2024 WL 756602, at *3 (D.D.C. Feb. 23, 2024); *see also State of Alaska v. U.S. Dep't of the Interior*, No. 25-cv-330 (PLF), 2025 WL 1730193, at *7 (D.D.C. June 23, 2025). Civil actions against a federal government agency or official may be heard in any district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). If the former TLCROW is deemed to involve property in the venue analysis, that property is located in Alaska. And even if the action is characterized as not involving real property, Plaintiff resides in Alaska. *See id.* § 1391(c)(2) (as a plaintiff, an entity resides "only in the judicial district in which it maintains its principal place of business"); Compl. ¶ 31 (Plaintiff is incorporated in Alaska, and its board consists of representatives of the city government of Nuiqsut, Alaska; a local tribe (Native Village of Nuiqsut); and a village-level Alaska Native Corporation (Kuukpik, Inc.)). Therefore, the District of Alaska certainly is a proper venue for this action.

### B. The Interests of Justice Weigh in Favor of Transfer to the District of Alaska

Having determined as a "threshold matter" that this lawsuit could have been brought in the District of Alaska, the Court then "decides whether the transfer would be in the interest of

5

convenience and justice" by evaluating the public and private interest factors. *W. Watersheds Project v. Tidwell*, 306 F. Supp. 3d 350, 356 (D.D.C. 2017). These factors favor transfer.

    1.    <u>The Public Interest Factors Strongly Favor Transfer</u>

The public interest factors include: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Bader v. Air Line Pilots Ass'n, Int'l*, 63 F. Supp. 3d 29, 36 (D.D.C. 2014) (citation omitted). All of these factors strongly support transfer.

The Court's task here is simplified by several recent decisions in comparable Alaska cases. "First, with regard to '[p]erhaps the most important factor in the motion-to-transfer balancing test,' *see Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 116 (D.D.C. 2015), the State of Alaska has a significant and uniquely local interest in having this controversy adjudicated 'at home.'" *AIDEA*, 2024 WL 756602, at *3.[1] Plaintiff's framing is not to the contrary, emphasizing "Iñupiat culture and traditions that date back millenia." Compl. ¶ 2.

Additionally, as in *AIDEA*, the existence of past and ongoing NPR-A litigation in Alaska makes "clear that the transferee court has relevant 'knowledge of the parties and facts' that favors transfer. *Id*. at *4 (quoting *Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 (D.D.C. 2010)). Aside from the above-cited Willow litigation, Interior has for

---

[1] Judge Cobb transferred AIDEA to the District of Alaska, despite plaintiff's assertion that it was a "national policy" case involving the Arctic National Wildlife Refuge, which also lies on Alaska's North Slope eastward of the NPR-A. *AIDEA*, 2024 WL 756602, at *3. Any similar assertion carries far less weight here, because this case is narrowly focused on the discrete TLCROW, not broader questions of NPR-A administration. *See also State of Alaska*, 2025 WL 1730193, at *9 (agreeing transfer to Alaska is appropriate "in light of the strong local interests implicated in this case").

years been defending challenges to the NPR-A Integrated Activity Plan ("IAP"), which provides a programmatic framework for NPR-A management. *See Nat'l Audubon Soc'y v. Haaland*, No. 3:20-cv-206-SLG, 2023 WL 5984204, at *1 (D. Alaska Sept. 14, 2023).[2] Indeed, in a case filed on February 19, 2026, plaintiffs' counsel advised the Alaska court, for purposes of its judicial assignment, that multiple Alaska IAP challenges are "related cases" not only to one another, but also to this case. *See* Notice of Related Cases, *Sovereign Iñupiat for a Living Arctic v. Burgum*, No. 3:26-cv-00078 (D. Alaska), Dkt. 4, Ex. 1 hereto. Transfer to a forum where "parallel litigation" is pending is appropriate "to promote judicial economy and avoid . . . 'potentially inconsistent rulings.'" *Seafreeze Shoreside Inc. v. U.S. Dep't of the Interior*, Nos. 21-cv-3276 (CRC), 22-cv-237 (CRC), 2022 WL 3906934, at *6 (D.D.C. June 27, 2022) (quoting *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 195 (D.D.C. 2012)).

Finally, the relative congestion factor does not alter this analysis. The caseload in the District of Columbia has typically been slightly heavier than in the District of Alaska, so if anything this factor "slightly favors transfer, but . . . plays a minor role in the Court's analysis." *AIDEA*, 2024 WL 756602, at *5.

Transfer best serves the interest in having this controversy decided in Alaska. And transfer will serve judicial economy and reduce the risk of overlapping or inconsistent

---

[2] Numerous other NPR-A cases have been decided in the District of Alaska (and Ninth Circuit), a few of which include *Kunaknana v. Clark*, 742 F.2d 1145 (9th Cir. 1984); *N. Alaska Env't Ctr. v. Kempthorne*, 457 F.3d 969 (9th Cir. 2006); *N. Alaska Env't Ctr. v. U.S. Dep't of the Interior*, 965 F.3d 705 (9th Cir. 2020); *Native Village of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201 (9th Cir. 2021); *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 516 F. Supp. 3d 943 (D. Alaska 2021); *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 555 F. Supp. 3d 739 (D. Alaska 2021); *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 701 F. Supp. 3d 862 (D. Alaska 2023).

proceedings. For all of these reasons, the public interest factors warrant transfer of this case to the District of Alaska.

   2.   <u>The Private Interest Factors Also Favor Transfer</u>

  The private interest factors relevant to a motion to transfer are: "1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses . . . ; and 6) the ease of access to sources of proof." *Bader*, 63 F. Supp. 3d at 34 (citation omitted); *Trout Unlimited*, 944 F. Supp. at 16. These factors also support transfer.

   *a.*   *Plaintiff's Choice Merits Little Deference For Transfer To Its Home Forum*

  A plaintiff's choice of forum is normally entitled to deference, and the party seeking transfer bears the burden of showing that transfer is appropriate. *Trout Unlimited*, 944 F. Supp. at 16-17. That deference and burden, however, are significantly diminished "when the 'plaintiff[']s] choice [of forum] has no factual nexus to the case,' and, where, as in this case, transfer is sought to the forum with which [the plaintiff] ha[s] substantial ties and where the subject matter of the lawsuit is connected to that state." *Id*. at 17 (first two alterations in original) (citation and footnote omitted); *see also AIDEA*, 2024 WL 756602, at *5.

  Plaintiff alleges that venue is proper in the District of Columbia because "a substantial part of the events or omissions giving rise to the claim" occurred within the District of Columbia. Compl. ¶ 30. But the question presented in this motion is not where venue could be proper, but whether transfer is appropriate. Here, the District of Alaska is the more appropriate forum. Likewise, the fact that the Decision was signed by an official at Interior's headquarters does not tip the balance in favor of keeping the case in the District of Columbia when the issues relating to the TLCROW relate in every other meaningful way to Alaska. That agency headquarters are

in the District of Columbia "simply proves too much" because if that fact were dispositive then "*any* challenge involving a federal law implemented by a federal agency could not be transferred elsewhere." *Preservation Soc'y. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54-55 (D.D.C. 2012); *see also AIDEA*, 2024 WL 756602, at *5 (Secretary's alleged involvement in a decision deemed insufficient "for this factor to tip the scales against transfer").

      b.      *The Remaining Private Factors are Neutral or Favor Transfer*

The second and third private interest factors both support transfer. The second factor, the defendants' choice of forum, should be accorded meaningful weight in this case. It is generally preferable "to unify related proceedings in the district where the cases were first filed." *Seafreeze Shoreside*, 2022 WL 3906934, at *7. And Defendants have "legitimate reasons for preferring" the District of Alaska. *See Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 48 (D.D.C. 2006). As explained above, NPR-A management is primarily connected to the District of Alaska because the NPR-A's 23.6 million acres are located there, the authorized activities and many of the environmental impacts will occur there, and the relevant agency personnel and cooperating agencies are in Alaska. For the same reasons, the third factor, where the action arose, weighs in favor of transfer. All relevant analysis, implementation efforts, and concrete impacts were performed by agency personnel in Alaska or will be felt by Alaska residents.

The remaining private interest factors – convenience of parties and witnesses and ease of access to evidence – are secondary because any review on the merits here will be through cross-motions for summary judgment based on an administrative record, and is therefore unlikely to involve presentation of witnesses or discovery. *See id*. (citing *Trout Unlimited*, 944 F. Supp. at 18). On balance, the private interest factors weigh in favor of transferring this case to the District of Alaska.

## V. <u>CONCLUSION</u>

For all these reasons, the Court should grant the Motion and transfer this action to the District of Alaska.

Respectfully submitted this 20th day of February 2026.

        ADAM R.F. GUSTAFSON
        Principal Deputy Assistant Attorney General
        United States Department of Justice
        Environment and Natural Resources Division

        <u>*/s/ Paul A. Turcke*</u>
        PAUL A. TURCKE (Idaho Bar # 4759)
        Trial Attorney, Natural Resources Section
        1290 West Myrtle Street, Suite 500
        Boise, ID 83702
        (202) 532-5994
        paul.turcke@usdoj.gov

        *Counsel for Defendants*

*Of Counsel*:

JOSHUA HANSON
JASON HARTZ
Office of the Solicitor
United States Department of the Interior